IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18 - CV - 01732
(To be supplied by the court)

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2018 JUL -9 PM 12: 24

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

TaHonie Watts,
   Plaintiff,

v.

Anthem Inc.,
   Defendant.

## TITLE VII COMPLAINT

### PARTIES

1. Plaintiff  TaHonie Watts  is a citizen of  Aurora, CO  who presently resides at the following address:
19350 E 57th Ave Aurora CO, 80019

2. Defendant  Anthem Inc.  lives at or is located at the following address:
700 Broadway Denver, CO 80203

Attach a separate page, if necessary, to list additional parties.

### JURISDICTION

3. Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

4. Defendant is an employer within the meaning of Title VII.

5. The alleged unlawful employment practices took place at the following location:
700 Broadway Denver, CO 80203

6. Jurisdiction also is asserted pursuant to the following statutory authority:

(Rev. 07/06)

**ADMINISTRATIVE PROCEDURES**

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on __03/17/2017__ (date) regarding the alleged discriminatory conduct by Defendant(s).

8. Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on __04/11/2018__ (date). (Please attach to the complaint a copy of the Notice of Right to Sue.)

**NATURE OF THE CASE**

9. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)
   ____ Race        ____ Color        ____ Religion
   ____ Sex         ____ National Origin
   __X__ Other (please specify) __Discrimination-Americans w/disabilities, Wrongful termination__

10. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)
    ____ Failure to hire
    ____ Failure to promote
    __X__ Demotion/discharge from employment
    ____ Other (please specify) _____

(Rev. 07/06)                                2

# FIRST CLAIM FOR RELIEF
# AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages.
Alternatively, you may attach to the complaint a copy of the charge of discrimination
you submitted to the Equal Employment Opportunity Commission.)

See the attached complaint

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | |
|---|---|
| Charge Presented To: | Agency(ies) Charge No(s): |
| ■ FEPA | **CHARGE NUMBER** |
| ☐ EEOC | FE201752429 |

Colorado Civil Rights Division

**Colorado Civil Rights Division and EEOC**

MAR 14 2017

Denver, Colorado

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. TaHonie Watts | (720) 621-0480 | September 14, 1988 |

| Street Address | City, State and ZIP Code |
|---|---|
| 19350 E. 57th Ave., #206 | Aurora, CO 80019 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS BELOW.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Anthem, Inc. | Thousands | (317) 488-6000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 120 Monument Circle | Indianapolis, IN 46204 |

DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 
Latest: September 16, 2016
☐ Continuing Action

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I, TaHonie Watts, allege the following:

**Jurisdiction:** The Colorado Civil Rights Division has jurisdiction over the subject matter of this charge; that the named Respondent is subject to the jurisdiction of the Colorado Civil Rights Division and is covered by the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, *et. seq.*), as reenacted.

**I. Personal Harm:** Anthem, Inc. ("Anthem") subjected me to disability discrimination and retaliation for requesting reasonable accommodations for my disabilities. As a result of Anthem's discrimination and retaliation against me, which culminated in my termination, I have suffered substantial economic and emotional damages.

**II. Respondent's Position:** Respondent denies my claims.

**III. Discrimination Statement:** Anthem discriminated against me in the terms and conditions of my employment in violation of the Colorado Anti-Discrimination Act ("CADA") and the Americans with Disabilities Act ("ADA"), inasmuch as:

A. I began working as a temporary clerk at Anthem in February 2014. In August, I was transferred to the Grievances and Appeals Department. Due to my strong performance, Anthem promoted me to a full-time Grievances and Appeals Rep I position in November 2014. I continued in that position until my unlawful termination on September 16, 2016.

B. My job performance was satisfactory throughout my approximately two (2) years of employment at Anthem.

C. I took periods of legally protected medical leave during my employment at Anthem. The first time I took leave under the federal Family and Medical Leave Act ("FMLA") was in December 2014, when I went on medical leave because of complications from my pregnancy. I returned to work in late December 2014 and continued taking intermittent medical leave as needed until I gave birth in June 2015.

D. After I gave birth in June 2015, I took FMLA maternity leave. Unfortunately, after giving birth I was diagnosed with the separate but related disabilities of hyperthyroidism and postpartum mood disorder.

PARTICULARS CONTINUED ON FOLLOWING PAGE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

*TaHonie Watts*

I declare under penalty of perjury that the above is true and correct.

3/14/17
Date

*TaHonie Watts*
Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year) 3-14-2017

FRAN COOKE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20044025372
MY COMMISSION EXPIRES 07/20/2020

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | Charge Presented To: Agency(ies) Charge No(s):<br>■ FEPA<br>☐ EEOC  PAGE 2 |
|---|---|
| | Colorado Civil Rights Division and EEOC |

E. I returned to work from maternity leave in August 2015. Upon my return, I required a reasonable accommodation due to my hyperthyroidism and postpartum condition.

F. Toward the beginning of August 2015, I approached Anthem Human Resources with a request for a reasonable accommodation for my disabilities. In response, Human Resources human resources approved me for shortened work hours (4.5 hours per day) and a somewhat reduced workload as a reasonable accommodation for my disabilities.

G. I continued working on a reduced work day until May 30, 2016, when I became able to work longer hours again. At that time, my daily workload increased to six (6) hours per day, with one short day per week on Wednesday to attend treatment for my postpartum disorder.

H. My illness worsened again in mid-July 2016. In response, I sought an additional reasonable accommodation of being allowed to miss two (2) or (3) days per month as needed. Anthem approved me for this reasonable accommodation for my disabilities, and I continued working as much as my disabilities allowed.

I. Hoping to get well so I would no longer need reasonable accommodations, I scheduled a total thyroidectomy for August 23, 2016. In advance of the surgery, I went out on leave on August 3 for medical reasons related to my disabilities.

J. I underwent the procedure on August 23, 2016 and (following the advice of my physicians) returned to work on September 7, 2016. At the time I returned to work, I still had reduced working hours as a reasonable accommodation, which Anthem had approved for an indefinite period of time.

K. In accordance with Anthem policy, I submitted the required paperwork for my two (2) separate periods of concurrent leave (August 2 to August 22 and August 23 to September 6). Anthem's Leave of Absence Department approved the periods of leave as reasonable accommodations for my disabilities on September 15 and September 9, 2016, respectively.

L. On September 15, shortly after I received notice that my pre-surgery medical leave had been approved as a reasonable accommodation for my disabilities, I received a calendar invite from Director of Appeals Patricia McGinnis and Human Resources manager Antoinette White to attend a call-in meeting the next day.

M. When I called in to the meeting on September 16, McGinnis and White fired me. They said I was being fired for "unsatisfactory performance," and claimed that I had violated Anthem policy by improperly failing to send appeal closure letters to some clients. The policy Anthem claims I violated was never distributed to me during my employment, and Anthem has declined to identify which portion of the policy it claims I violated.

## PARTICULARS CONTINUED ON FOLLOW PAGE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Jahmui Buf* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>3/14/17  *Jahmui Buf*<br>Date  Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year) 3-14-2017<br><br>FRAN COOKE<br>NOTARY PUBLIC<br>STATE OF COLORADO<br>NOTARY ID 20044025372<br>MY COMMISSION EXPIRES 07/20/2020 |

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: Agency(ies) Charge No(s):<br>■ FEPA<br>☐ EEOC      PAGE 3 |
|---|---|
| | Colorado Civil Rights Division and EEOC |

    N. Anthem's claimed reason for my termination is false, and is pretext for discrimination and retaliation. At all times, I acted in accordance with the training I had received, and with the behavior of all other employees in the department. The process that Anthem claims I should have followed is inconsistent with how I had been trained repeatedly throughout my employment at Anthem. In addition, upon information and belief, Anthem did not discipline or fire any of my coworkers in the department who regularly follow the same processes that Anthem claims led to my termination.

    O. The real reason for my termination is that my supervisors had grown tired of my need for medical leave and reasonable accommodations for my disabilities. They retaliated against me by concocting a pretextual reason to fire me. I was fired the very next day after Anthem's Leave of Absence Department approved a reasonable accommodation for my disabilities.

IV. **WHEREFORE:** The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

*[Stamp: Colorado Civil Rights Division / MAR 14 2017 / Denver, Colorado]*

**PARTICULARS CONTINUED ON FOLLOW PAGE**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*/s/ Jahnmu Zul/* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>3/14/17      *[signature] Jahnmu Zul*<br>Date      Charging Party Signature | NOTARY – When necessary for State and Local Agency Requirements<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, date, year) **3-14-2017**<br>*[signature]*<br>FRAN COOKE<br>NOTARY PUBLIC<br>STATE OF COLORADO<br>NOTARY ID 20044025372<br>MY COMMISSION EXPIRES 07/20/2020 |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM/NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsown declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify EEOC** or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against anyone, or for a union to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# DECLARATION OF TAHONIE WATTS

Colorado Civil Rights Division
MAR 14 2017

I, TaHonie Watts, being over the age of eighteen (18), do hereby state and declare as follows:

1. I began working for Anthem, Inc. ("Anthem") in February 2014. Anthem transferred me into the company's Grievances and Appeals Department in August 2014. Initially, I was placed at Anthem by a staffing agency as a temporary clerk to fill in for another employee who was on maternity leave. My job performance was so strong in my temporary position that in November 2014 Anthem hired me into a permanent Grievances and Appeals Rep I position.

2. In November 2014, my very first month of permanent employment with Anthem, I learned that Anthem frowns upon employees in the Grievances and Appeals Department who are perceived as taking too much medical leave. That month, a coworker on my team named Nikki Anselmo was forced to go on FMLA because of medical issues with her back.

3. During Anselmo's leave, my Manager Brandon Martinez (who had recently been promoted from Team Lead) commented to another coworker that Anselmo might not have her job any longer because she had gone out on leave.

4. Not long after Anthem hired me as a permanent employee, in December 2014, I was forced to take one (1) week of my own medical leave because of complications from my high-risk pregnancy. (Though I had been a permanent Anthem employee for only a few weeks at that time, I was already eligible for FMLA leave under the terms of Anthem's leave policy.)

5. In late December 2014, I returned to work from my leave. From January to June, I worked full-time as my health permitted, taking intermittent FMLA leave as necessary. During that time, I worked regular appeals cases until Manager Brandon Martinez assigned me to a special project which required me to test a new client notification system which was designed to automatically send notice letters closing benefits appeals.

*After being diagnosed with the disabilities of hyperthyroidism and postpartum mood disorder, I request a reasonable accommodation.*

6. On June 10, 2015, I gave birth to my daughter and began a period of FMLA-protected maternity leave. Unfortunately, during my leave, in July 2015 I was diagnosed with hyperthyroidism as an ongoing complication from my pregnancy. Though I had been suffering from the effects of the condition throughout the later part of my pregnancy, I had never known the cause of my symptoms, and only received the diagnosis after giving birth.

7. Although I learned that I had a hyperthyroid condition in July 2015, I was not able to meet with an endocrinologist for further evaluation and development of a treatment plan until late August 2015. I was later diagnosed with pregnancy-related postpartum mood disorder, another disability separate from, but related to, my hyperthyroidism.

8. I returned to work in mid-August 2015 and quickly transitioned back to working full time. However, shortly afterward my hyperthyroidism and my postpartum condition worsened, and I soon became unable to work full-time without a reasonable accommodation for my newly diagnosed disabilities.

9. Near the beginning of August 2015, I approached human resources with a request for a reasonable accommodation for my disabilities. Human Resources approved me for an indefinite accommodation of shortened work hours (4.5 hours per day) and a somewhat reduced workload as a reasonable accommodation. (Anthem has repeatedly admitted that this was a reasonable accommodation, and later re-approved the accommodation twice.) I continued working on my reduced 4.5 hour work days until May 30, 2016.

10. Even while working reduced hours as a reasonable accommodation, I always made an extra effort to help my busy coworkers whenever I could, exceeding the requirements of my position. I was always eager help my teammates with the department's high volume of workload whenever my health allowed.

11. Beginning in June 2016, my medical limitations allowed me to increase my daily workload to six (6) hours per day, with one short day per week on Wednesday to attend treatment for my postpartum disorder. At that time, the department's inventory of open assignments had grown, and I was able to assist the rest of the team tackle the increased workload with my increased hours.

*My illness progresses, forcing me to seek an additional reasonable accommodation.*

12. Unfortunately, my illness worsened in mid-July 2016, forcing me to seek the additional reasonable accommodation of being allowed to miss two (2) or (3) days per month. Anthem approved me for this reasonable accommodation for my disabilities, and I worked as much as my health allowed.

13. Determined to get well so I would be able to return to work full time once and for all without a reasonable accommodation, I scheduled surgery – a total thyroidectomy – for August 23, 2016.

14. In advance of my thyroid surgery, I went out on leave on August 3 for medical reasons related to my hyperthyroidism and my postpartum mood disorder. I underwent the procedure on August 23, 2016 and (following the advice of my physicians) returned to work on September 7, 2016. At the time I returned to work, I still required reduced working hours as a reasonable accommodation.

15. During my leave before and after my surgery, Anthem hired a temporary employee to fill in for me. However, when I returned from my short period of leave, I learned to my surprise that the temporary employee was going to stay in the department, expanding the department's normal size. I later learned that my managers had hired the temporary employee as my replacement, having already planned to fire me in retaliation for taking leave.

*The very day after I learned that Anthem had approved my pre- and post-surgery leave as a reasonable accommodation for my disabilities, my managers retaliated by firing me.*

16. On September 13, shortly after my return from leave for my surgery, temporary supervisor Yvonne Harris asked me for information about a series of closure letters for certain appeal cases I had been working on. I provided Harris the letters and explanation of the status of each case. If the letters did not exist, I explained why. *See* Attachment 1. On some of those cases, I had not sent a closure letter to the client because the claim had been already closed by adjustment from another department before I had completed disposition of the appeal.

17. In accordance with Anthem policy, I submitted the required paperwork for my two (2) separate periods of concurrent leave (August 2 to August 22 and August 23 to September 6). Anthem's Leave of Absence Department approved the periods of leave as reasonable accommodations for my ADAAA-qualified disabilities on September 15 and September 9, 2016, respectively. See Attachments 4 and 5.

18. On September 15, just moments after I received notice that my pre-surgery medical leave had been approved as a reasonable accommodation for my disabilities, I also received a calendar invite from Director of Appeals Patricia McGinnis and Human Resources manager Antoinette White to attend a call-in meeting the next day.

19. When I called in to the meeting, McGinnis and White abruptly informed me that I was being fired. They indicated that I was being fired for "unsatisfactory performance," and claimed that I had violated Anthem policy by improperly failing to send appeal closure letters to some clients. Anthem later falsely claimed in opposing my application for unemployment benefits that my actions had threatened to cause Anthem's plan to be out of compliance with state insurance law.

20. Though Anthem claims I was terminated for violating a company policy, it has declined to identify which policy I allegedly violated. I never received any such policy throughout my employment at Anthem.

*Anthem's claimed reason for my termination is pretextual.*

21. Anthem's claimed reason for firing me – that I should have sent appeal closure letters out to Anthem clients whose inquiries had already been completed and closed by another department – is inconsistent with the standard practice among all employees in the Grievances and Appeals department.

22. At the beginning of my employment and on many occasions afterward, I had discussed with coworkers and supervisors how I should handle this exact situation, where a claim had been adjusted by another department before the client's appeal was due to be closed, and before I had completed disposition of the claim and sent it over to be adjusted.

23. For instance, in January 2015, I had discussed the same situation with Cassandra Lawler (a coworker who had been assigned to train me) via Anthem's internal instant messenger service. *See* Attachment 2. Lawler trained me to close out the claim and note in the file that the client's explanation of benefits letter would serve as notice that the appeal had been closed. Lawler added that I could – but was not required to – send out a letter to the client explaining that the claim had been adjusted prior to the completion of the appeal.

24. On another occasion in March 2016, Director of Appeals Patricia McGinnis had instructed a coworker named Nikki Collen to close out appeals as "not met" or "no action taken" when the claim had been adjusted prior to completion of the appeal. *See* Attachment 3. Consistent with McGinnis's instruction, none of My coworkers in the department believed they were required to send closure letters in these circumstances.

25. After being trained to handle the situation in this manner, I had in turn trained other employees to do the same. This had never been an issue in the past, and my coworkers and I treated such adjustments as formal closure of the appeal regularly as a matter of course. Throughout my employment, my coworkers and I closed claims in this manner without sending additional closure letters.

26. When I attempted to explain to McGinnis and White that I had been acting consistently with my training and with usual department protocol, they refused to listen.

27. The real reason I was fired was that McGinnis and White became frustrated that they would have to continue accommodating my disabilities. Clearly, McGinnis and White had grown tired of my need for medical leave and reasonable accommodations for my disabilities, and retaliated against me by concocting a reason to fire me.

28. I believe that Anthem's actions violated the Colorado Anti-Discrimination Act and the Americans with Disabilities Act. Anthem discriminated against me because of my disabilities and retaliated against me for requesting reasonable accommodations for my disabilities.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

2\14\18
Date

_____
Charging Party TaHonie Watts

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

I am requesting that the defendant be ordered to pay me back wages dated to 09/16/2016 which is the date that I was wrongfully terminated. I am requesting that I am paid my last known hourly rate at my last known weekly hours worked from 09/16/2016 until the date that this claim is resolved. I request that the defendant be ordered to reimburse my filing fee as well as other expenses that I have accrued and will accrue during the processing of this lawsuit.

Date: 7/9/2018

(Plaintiff's Original Signature)

19350 E 57th Ave #206
(Street Address)

Aurora, CO 80019
(City, State, ZIP)

720-621-0480
(Telephone Number)

(Rev. 07/06)                                    6